## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-62064-Civ-SCOLA

CHRISTINA ONITA-OLOJO, as
Personal Representative of the Estate
of JENNIFER ONITA, *and others*,

                                       *Consolidated Case No. 13-60443*

      Plaintiffs,

vs.

STACEY VEOLETTE SELLERS, as
Personal Representative of the Estate of
PETER SIMON WAXTAN,

      Defendant.

_____/

# Order Granting In Part, Denying In Part
# Defendant's *Forum Non Conveniens* Motion

In June 2012, Dana Airlines Flight 992 crashed while attempting to land in Lagos, Nigeria; everyone on board was killed.  These mass-tort lawsuits followed.  The Defendant argues that these matters should proceed in the courts of Nigeria, and that the cases should be dismissed under the doctrine of *forum non conveniens*.  For the reasons explained in this Order, the claims brought by the estates of United States citizens or residents will not be dismissed; the claims brought by the estates of non-United States citizens or residents will be dismissed.

## 1. Background

There are no words to adequately explain the tragedy from which this case emanates.  In June 2012, a Dana Airlines flight crashed on approach to the Murtala Muhammed Airport in Nigeria.  One hundred and sixty-three people died as a result of the crash; 153 on board the aircraft and 10 people on the ground.  The flight was domestic, traveling from Abuja, Nigeria to Lagos, Nigeria.

The Plaintiffs in this case consist of the estates of many of the people who died as a result of this plane crash.  For purposes of this Order, there are two groups of Plaintiffs.  The first group is made up of those cases where the decedent was a citizen or resident of Nigeria (or some country other than the

United Sates).[1]   This group is composed of foreign (*i.e.*, non-United States) citizens or residents.   *Cf. Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 n.2 (11th Cir. 2010) ("An estate shares the same citizenship as its decedent."). The second group consists of those cases where the decedent was a citizen or resident of the United States.   These cases are considered United States citizens or residents when evaluating if this matter should be dismissed pursuant to the *forum non conveniens* doctrine.   The Defendant in this case is the estate of the pilot.   Stacey Veolette Sellers is the daughter of the pilot and serves as the personal representative of his estate.

The Defendants moved to dismiss the case on the grounds of *forum non conveniens*.   The parties conducted limited discovery, and have extensively briefed the issue.   For the reasons explained in this Order, and considering all of the relevant *forum non conveniens* factors, this Court finds that Nigeria is the more appropriate forum for the cases brought by non-United Sates citizens or residents.   But that the United States is the appropriate forum for the cases where the decedent was a citizen or resident of the United States.

## 2. Legal Standard: Doctrine of *Forum Non Conveniens*

The purpose of the common-law doctrine of *forum non conveniens* (forum not agreeing) is to ensure that a case can be litigated conveniently in the setting in which it was filed.   *See La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983).   By virtue of the doctrine, a district court may decline to exercise jurisdiction over a case when an adequate, alternative forum is available.   *Id.*

In undertaking a *forum non conveniens* analysis, a court must first consider whether the proposed alternative forum is available and adequate. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).   "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred."   *Id.*   An alternative forum is adequate so long as it "offers at least some relief."   *Id.*

If the court finds that the alternative forum is both available and adequate, the court must then evaluate both the public and private interests involved in retaining the case.   *Leon*, 251 F.3d at 1311.   Private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, . . . and all other practical problems that make trial of a case easy, expeditious and

---

[1] (*Compare* Third Am. Compl. ¶¶ 9-31 and 34-41, ECF No. 12 *and* Compl. ¶¶ 2-17, ECF No. 1 in Case No. 13-60443-Civ-Scola (non-United States claimants) *with* Third Am. Compl. ¶ 2-8, 32-33 (United States claimants).

inexpensive." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Public interests include the administrative burden imposed upon the court, the imposition of jury duty on the citizens of a community, and the "local interest in having localized controversies decided at home." *Id.*

"[T]he plaintiffs' choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant." *Id.* (internal quotation marks omitted). A court must "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before" denying a United States citizen or resident access to the courts of this country. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983). "[A] foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

## 3. Analysis

### A. Availability and Adequacy of Nigerian Jurisdiction

Nigeria is an available and adequate alternative forum. Sellers begins her *forum non conveniens* argument by agreeing to submit to jurisdiction in Nigeria, agreeing to allow her attorneys to accept service of process from a Nigerian court, and agreeing to waive any applicable statutes of limitations defenses. (Mot. Dismiss 2, ECF No. 24.) Sellers has also agreed to not contest liability if the case is dismissed here and brought in Nigeria, leaving only the damages determination for each Plaintiff. (Reply 3, ECF No. 89.)

It is undisputed that Nigeria is an available forum. Sellers's concessions and stipulations (regarding accepting service, etc.) mean that Nigeria is an available forum. *See Leon*, 251 F.3d at 1311. The Plaintiffs' own expert concedes this point. (*See* Oguntade Decl. ¶ 1.16 at p.12, ECF No. 76-11 (explaining the course this case would take if it "were to be tried in Nigeria").)

Nigeria is also an adequate forum. Professor Fagbohun has provided a detailed overview of the Nigerian judicial system, specifically the laws and the court procedures relating to a civil lawsuit brought to recover for wrongful-death and personal-injury claims.[2] (Fagbohun Decl. ¶¶ 19-41, ECF No. 24-1 ("Based on the [enumerated] laws of the Federal Republic of Nigeira, it is my opinion that the Federal High Court is in a position to grant wide legal and equitable remedies for wrongful death in ways that are substantially similar to

---

[2] The Defendants expert witness is Professor Olanrewaju Adigun Fagbohun. He is thoroughly qualified and is both an academic and legal practitioner in Nigeria. (Fagbohun Decl. ¶¶ 1-4, ECF No. 24-1.)

the treatment the United States District Court, Southern District of Florida will grant to the Plaintiffs in this instant case.").)

The Plaintiffs argue that Nigeria is inadequate. First, the Plaintiffs assert that Nigeria is unsafe, citing reports from the United States Department of State. But similar travel warnings from the State Department were in effect at the time of the accident and every decedent in this case either lived in Nigeria, or voluntarily traveled to Nigeria and nearly all were actively traveling within the Country when this accident occurred. In any event, these arguments are unpersuasive because none of the safety concerns specifically relate to this case or the individuals involved in this litigation. *See BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 247 F.R.D. 427, 432 (S.D.N.Y. 2007) *aff'd*, 298 F. App'x 87 (2d Cir. 2008) (explaining that the plaintiff failed to offer evidence of violence in Nigeria "directed towards this litigation or individuals connected with this case") (internal quotation marks omitted). This argument is further belied by that fact that some of the decedents' estates have already brought claims in Nigeria, including some who were formerly Plaintiffs in this case.

Second, the Plaintiffs argue that Nigeria is not an adequate alternative forum because the Nigerian Courts are corrupt. Specifically, they cite reports from the Department of State that "[o]fficial corruption and lack of will to implement court decisions, [as well as pressure from the legislature and business interests], interfered with due process." (Resp. 17, ECF No. 79 (quoting Human Rights Report (Nigeria), Dep't of State 2011 (pp.22-23), ECF No. 76-8).) Citing another Report, they argue there is a "widespread perception" that Nigerian judges are "easily bribed." (Resp. 17, ECF No. 79 (quoting Human Rights Report (Nigeria), Dep't of State 2012 (p.35), ECF No. 76-9).) The fact that the Plaintiffs have retained, as their expert, a retired justice of the Nigerian Supreme Court undermines this argument. Regardless, these are exactly the types of "generalized, anecdotal complaints of corruption" that are insufficient to declare that a country cannot serve as an adequate forum." *See Stroitelstvo Bulg. Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009); *accord Warter v. Boston Sec., S.A.*, 380 F. Supp. 2d 1299, 1311 (S.D. Fla. 2004) ("Only evidence of actual corruption in a particular case will warrant a finding that an alternate forum is inadequate.").

Finally, the Plaintiffs argue that Nigeria is inadequate because of excessive delays experienced in the civil system. Sellers's expert, Professor Fagbohun, has explained that recent reforms to the Nigerian judicial system "have without doubt yielded positive dividends and reduced the delays associated with the Courts prior to the reforms." (Fagbohun Resp. Aff. ¶¶ 4, 28-31, ECF No. 89-2.) Professor Fagbohun also noted that most of the exemplar cases relied upon by the Plaintiffs' expert (to show excessive delay in

Nigerian courts) involved complicated land disputes, or a determination as to the chieftaincy of a particular village under the local customary law. (*Id.* ¶¶ 33-38.)  Professor Fagbohun goes on to catalog a random sampling of civil cases making their way through the Nigerian legal system relatively quickly.  (*Id.* ¶¶ 39.)  Notably, nowhere in the Plaintiffs' expert's affidavit does he state that he has never seen a civil litigation work its way through the Nigerian legal system within a reasonable time.  (*See generally* Oguntade Decl., ECF No. 76-11.)

This Court finds that Nigeria is an available and adequate alternative forum to litigate the claims raised in this litigation.  The Court now turns to the private and public factors.

## B. Private Interests

Private factors that must be considered in the *forum non conveniens* analysis include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *SME Racks, Inc.*, 382 F.3d at 1100 (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09 (1947)).  Domestic plaintiffs (*i.e.*, United States citizens, residents, or corporations) are afforded "'a strong presumption' that their forum choice is sufficiently convenient." *Leon*, 251 F.3d at 1311 (quoting *Piper Aircraft Co.*, 454 U.S. at 256.  Courts apply a "weaker presumption" of convenience when evaluating foreign plaintiffs' cases. *Id.*

Most of the liability evidence in this case is in Nigeria.  For example, the wreckage of the airplane, the aircraft's maintenance records, Dana Airline employees responsible for maintaining the aircraft, air traffic controllers who monitored the flight leading up to the accident, and Nigerian officials investigating the accident are all located in Nigeria. (Mot. Dismiss 19-20, ECF No. 24.)  Significantly, it appears that the cockpit voice recording and the transcripts of that recording may only be available through the Nigerian Aviation Investigation Bureau or by order of a Nigerian court. (Reply 16, ECF No. 89.)  The Plaintiffs respond that "[p]roof of the pilot's liability here is, to put it bluntly, likely to be a no-brainer." (Resp. 34, ECF No. 79.)  The Plaintiffs suggest that they can rely primarily on expert witnesses to prove liability. (*Id.* at 35.)  The countervailing analysis—whether liability evidence would be available in Nigeria—is unnecessary because Sellers has agreed to concede liability for cases refiled in Nigeria. (Reply 17, ECF No. 89.)

The damages evidence will largely be where each decedent lived prior to the plane crash.  Sellers argues that "virtually all of the damages evidence is located in Nigeria," including witnesses and documents relevant to the

Plaintiffs' damages claims. (Mot. Dismiss 18.)  The Plaintiffs respond, arguing that damages evidence for the claims where the personal representative is a citizen or resident of the United States will be primarily, or completely, located in the United States.  (Resp. 39, ECF No. 79.)  The Plaintiffs also argue that a "substantial number of the survivors who claim damages as a result of the decedents' deaths are U.S. citizens or residents as well." (*Id.*)  Regardless, the determining factor for where damages evidence is likely to be available is where the decedent resided prior to the accident, not where any survivors claiming damages live.   The Plaintiffs' argument on this point is a silent, but appropriate, concession: damages evidence for the Nigerian Plaintiffs, both testimonial and documentary, will largely be found only in Nigeria.  (*Cf.* Resp. 39, ECF No. 79.)  The Plaintiffs' argument that there will be no need to conduct damages discovery for every claim is not credible.

In summary, evidence of damages for the cases where the decedent resided in Nigeria will be substantially more accessible in Nigeria because the damages evidence will come from testimony from the decedent's family members, friends, neighbors, and coworkers, as well as from the decedent's employment records, school records, and tax records.  *See* 11 Am. Jur. *Trials* 1, §§ 12-16 (1966).  If these Nigerian Plaintiffs proceed in this Court, the Defendants will be unfairly prejudiced because this Court cannot compel non-party witnesses in Nigeria to produce documents or to provide testimony.  (*See* Mot. Dismiss 21, ECF No. 24.)   This unfairness is magnified because the Plaintiffs will be able to use documents and testimony provided by cooperative witnesses in Nigeria, but Sellers will not be able to compel evidence from uncooperative witnesses.  *Cf. Gulf Oil Corp.*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.").   This group of uncooperative witnesses may even include witnesses who are willing to provide their testimony, but because of the commitments and responsibilities of everyday life, simply cannot travel 5,627 miles to a foreign country to provide testimony in this case.  On the other hand, evidence of damages for the cases where the decedent was a United States citizen or resident at the time of his or her death will be more accessible in the United States because, again, this evidence will come from testimony from the decedent's family members, friends, neighbors, and coworkers, as well as from the decedent's employment records, school records, and tax records.  *See* 11 Am. Jur. *Trials* 1, §§ 12-16 (1966).

### C. Public Interests

Public interest factors that should be considered in a *forum non conveniens* analysis include: "court congestion and jury duty generated by

controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). Additionally, "[t]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1311 (11th Cir. 2002).

This is a complex, mass-tort case that will contribute significantly to this Court's already crowded docket. And even if liability can be determined through one trial, there will need to be multiple trials on damages. (*See* Pls.' Resp. 33, ECF No. 79.) The burden on the jury-serving public of South Florida will be significant. This Court will be tasked with having to untangle difficult conflict-of-law issues, and will be faced with the prospect of having to apply Nigerian customary law (which is the "organic or living law of indigenous people of Nigeria regulating their lives and transactions").[3] Finally, Nigeria clearly has a more compelling interest than the United States in resolving these lawsuits, since this accident is among one of the worst aviation disasters in the Country's recent history.

All of these factors weigh heavily in favor of Nigeria being a more appropriate and convenient forum for this case. But the Court must also weigh the "strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *Esfeld*, 289 F.3d at 1311. Considering all relevant factors, this Court finds that Nigeria is the more appropriate and convenient forum for this case to proceed with respect to the foreign Plaintiffs; and that the United States is the more appropriate and convenient forum for this case to proceed with respect to the United States Plaintiffs.

### D. Unclean Hands Doctrine

"He who comes into equity must come with clean hands." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933). A court invokes this Unclean Hands Doctrine where a party's egregious conduct "shock[s] the moral sensibilities of the judge." *Art Metal Works v. Abraham & Straus*, 70 F.2d 641, 646 (2d Cir. 1934) (Hand, J., dissenting).

Here, the Plaintiffs ask the Court to construe the Defendants' conduct as shocking and inequitable. The conduct offered up for such a harsh judgment is the Defendant's counsel's decision to settle an insurance claim filed by the

---

[3] (Fagbohun Resp. Aff. ¶ 36, ECF No. 89-2.)

estate of the deceased pilot, so that the Defendant could raise a *forum non conveniens* objection to continuing the case in this Court. Neither of these events is out of the ordinary, and certainly neither is shocking. First, amicable settlements are highly encouraged. *See Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975). Construing the decision to settle the pilot's estate's claim as a nefarious act would discourage such settlements in the future. Second, a *forum non conveniens* objection in an airplane-crash case is nothing out of the ordinary. *See, e.g., Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (S.D.N.Y. 2007).

It is not shocking to the Court that the Defendant would prefer to defend this action in Nigeria, just as it is not shocking that the Plaintiffs would prefer to prosecute this action in the United States. Neither party has *unclean hands* because of their preference of forum. The Plaintiff's citation to cases where plaintiffs have preemptively poisoned the foreign forum is not compelling. (Resp. 12–13, ECF No. 79.) Unlike in those cases, the Defendant's counsel has done nothing to make either forum inhospitable to either party. In litigation, as in life, strategy is a part of the process. Employing a particular strategy to gain a perceived advantage is not intrinsically inequitable.

### 4. Conclusion

Sellers has presented competent substantial evidence that Nigeria is an available and adequate alternative forum. Sellers's agreement to concede liability for claims refiled in Nigeria makes it, in some respects, a more attractive forum than the United States. As further evidence of its availability and adequacy, several claimants (even some who were previously plaintiffs in this lawsuit) have brought their claims in Nigeria. (Reply 21, ECF No. 89.)

Weighing both the public and private interest factors the Court concludes that Nigeria is the more appropriate forum for the cases of Nigerian and foreign decedents, but that the United States is the more appropriate forum for the cases of the United States decedents. Considering the factors with respect to the non-Nigerian and non-United States decedents, the Court finds that it would be decidedly inconvenient for these cases to proceed in the United States.

The claimants whose cases are more conveniently litigated in Nigeria will be able to pursue their claims in Nigeria without undue inconvenience or prejudice. Sellers has agreed to the following conditions upon dismissal: (1) to consent to jurisdiction by a Nigerian civil court and to accept service of process through counsel, (2) to toll any applicable statute of limitations in Nigeria, (3) to make all relevant documents in Defendant's possession, custody, or control

available to a Nigerian court, and (4) to not contest liability in Nigeria for the cases refiled there.  (Mot. Dismiss 4; Reply 3.)

It is **ordered** that the Defendant's Motion to Dismiss (ECF No. 24) is **granted in part and denied in part**.  The Court grants the Motion with respect to cases where the decedent resided in Nigeria or elsewhere outside of the United States, specifically the cases identified in paragraphs 9-31 and 34-41 of the Third Amended Complaint (ECF No. 12) and all of the Plaintiffs in the 13-60443 Case.  These cases are dismissed based on the *forum non conveniens* doctrine.  The cases identified in paragraphs 1-8 and 32-33 of the Third Amended Complaint are not dismissed and will remain pending in this Court.

Relatedly, the Plaintiff's Motion to Strike the Defendant's Reply Affidavits (ECF No. 92) is **denied** for the reasons articulated in the Defendant's Response Brief (ECF No. 93).

**Done and ordered**, in chambers at Miami, Florida, on March 31, 2014.

**Robert N. Scola, Jr.**
**United States District Judge**